UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID ANTHONY ABRAHAMS,<br>Petitioner,<br>v.<br>WARDEN GUADARRAMA,<br>Respondent. | : | 3:25-CV-883 (SFR) |

## MEMORANDUM & ORDER

David Anthony Abrahams ("Abrahams"), an individual serving a sentence in the custody of the Connecticut Department of Correction ("DOC"),[1] has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* Pet., ECF No. 1. Abrahams challenges his 2001 convictions and sentences in Connecticut Superior Court for attempt to commit murder, assault in the first degree, criminal possession of a firearm, and commission of a felony with a weapon. *Id*. In response to an order to show cause, Respondent filed a motion to dismiss the petition pursuant to 28 U.S.C. § 2244(d), on the grounds that the petition is time-barred, or alternatively, that the petition does not set forth claims that have been entirely exhausted. Resp't Mot. to Dismiss, ECF No. 14. Abrahams has opposed the motion. *See* Pet'r Opp'n, ECF No. 23.

[1] I may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The DOC website reflects that Abrahams is currently housed at MacDougall Walker Correctional Institution in the custody of the DOC. He was sentenced on December 7, 2001, and his maximum release date is April 26, 2049. *See* https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=241224 (last visited March 12, 2026).

For the reasons set forth below, I deny the Respondent's motion to dismiss Abrahams' federal habeas petition in its entirety.

## I. PROCEDURAL BACKGROUND

This is Abrahams' third petition for writ of habeas corpus pursuant 28 U.S.C. § 2254 ("§ 2254 petition" or "federal habeas petition" or the "petition), that he has filed in this District. In 2010, Abrahams' first § 2254 petition was dismissed because he had not properly exhausted his claims. *See Abrahams v. Comm'r of Corr.*, No. 3:10-CV-519 (MRK), 2010 WL 5093113, at *8 (D. Conn. Dec. 8, 2010). In 2019, the Court[2] dismissed Abrahams' second § 2254 petition, filed in 2017, because it contained both exhausted and unexhausted claims. *See Abrams v. Comm'r of Corr.*, No. 3:17-CV-1732 (MPS), 2019 WL 919581, at *16 (D. Conn. Feb. 25, 2019).[3]

### 1. Former Federal Habeas Corpus Actions & Earlier State Court Procedural History

I adopt and incorporate the procedural history as set forth in the Court's Order Granting Respondent's Motion to Dismiss Abrahams' 2017 federal habeas corpus petition, as well as the record from Case No. 3:17-1732 (MPS). *See id.* In the order dated February 25, 2019, the Court recited the following facts.[4]

---

[2] The Honorable Michael P. Shea presided over Abrahams' second habeas proceeding.

[3] Abrahams filed his second § 2254 petition under the name "David Abrams," but for purposes of uniformity I will solely refer to the petitioner as "Abrahams."

[4] I have fully adopted and incorporated the procedural background from the Order Granting Respondent's Motion to Dismiss in Case No. 3:17-CV-1732 (MPS), which I have reiterated primarily verbatim, with alterations indicated in brackets. I have added headers and cite to the pages encompassing the procedural background from Chief Judge Shea's order at the end of this section.

### A. Arrest, Trial, Conviction & Sentencing

On November 9, 2000, a Danbury police officer arrested [Abrahams] on charges of criminal attempt to commit murder, assault in the first degree, and criminal violation of a protective order. . . . On October 17, 2001, an assistant state's attorney in the Connecticut Superior Court for the Judicial District of Danbury filed a substitute long form information charging [Abrahams] with criminal attempt to commit murder in violation of Connecticut General Statutes §§ 53a-49, 53a-54a, assault in the first degree in violation of Connecticut General Statutes § 53a-59, criminal possession of a firearm in violation of Connecticut General Statutes § 53a-217, and commission of a Class A, B, or C felony with a firearm in violation of Connecticut General Statutes § 53-202k. . . .

On October 26, 20[0]1,[5] after a trial, a jury convicted [Abrahams] of all four counts in the substitute information. . . . After the judge accepted the jury's verdict, the judge considered the charge that [Abrahams] had violated the conditions of the term of probation imposed as part of his prior 1998 sentence for a conviction of possession of a weapon in a motor vehicle in *State v. Abrams*, Case No. D03D-CR97-0131949-T. . . . The judge found [Abrahams] had violated the conditions of the term of probation. . . .

On December 7, 2001, the judge who had presided over [Abrahams'] trial in *State v. Abrams*, Case No. DBD-CR00-0110691-S, held a hearing to sentence [Abrahams] pursuant to his convictions for criminal attempt to commit murder, assault in the first degree, criminal possession of a firearm in that case and to sentence [Abrahams] pursuant to his conviction for a violation of probation in *State v. Abrams*, Case No. D03D-CR97-0131949-T. . . . At the hearing, the judge sentenced [Abrahams] to a five-year term of imprisonment pursuant to his finding that [Abrahams] had violated the conditions of the term of probation imposed as part of his prior 1998 sentence for a conviction of possession of a weapon in a motor vehicle in *State v. Abrams*, Case No. D03D-CR97-0131949-T. . . . The judge also sentenced [Abrahams] to eighteen years of imprisonment followed by two years of special parole pursuant to his conviction for criminal attempt to commit murder, eighteen years of imprisonment followed by two years of special parole pursuant to his conviction for assault in the first degree, five years of imprisonment pursuant to his conviction for criminal possession of a firearm, and five years of imprisonment followed by five years of special parole pursuant to his conviction for commission of a Class A, B, or C felony with a firearm in *State v. Abrams*, Case No. DBD-CR00-0110619-S. . . .

---

[5] The Court's order stated that "On October 26, 2011, after a trial, a jury convicted [Abrahams]." This was a scrivener's error. The Jury returned a guilty verdict on October 26, 2001. *See State v. Abrahams*, No. DBD-CR00-0110691-S, 2001 WL 36279814 (Conn. Super. Dec. 07, 2001).

All sentences imposed in *State v. Abrams*, Case No. DBD-CR00-0110619-S were to run consecutively to each other and consecutively to the five-year sentence imposed pursuant to the conviction for violation of probation in *State v. Abrams*, Case No. D03D-CR97-0131949-T[,] and the terms of special parole were also to run consecutively to each other. . . . Thus, the total effective sentence imposed for the convictions in Case No. DBD-CR00-0110619-S and Case No. D03D-CR97-0131949-T was fifty-one years of imprisonment followed by nine years of special parole. . . .

### B. Direct Appeal & Request for Belated Appeal

[Abrahams] appealed his convictions and sentences imposed in *State v. Abrams*, No. DBD-CR00-0110619-S on the ground that the assistant state's attorney assigned to his case deprived him of his "right[ ] to due process and to a fair trial" by engaging in various forms of "prosecutorial misconduct" during trial and during his closing argument. . . .[6] On October 7, 2003, the Connecticut Appellate Court determined that although the prosecutor had engaged in two types of improper misconduct during closing argument, [Abrahams'] trial was not fundamentally unfair. . . . Thus, the Connecticut Appellate Court affirmed the judgment of the trial court. . . .

On October 16, 2003, [Abrahams'] appellate counsel filed a motion for reconsideration and for reconsideration *en banc*. . . . On January 1[4], 2004,[7] the Connecticut Appellate Court denied [Abrahams'] motion for reconsideration and reconsideration *en* banc. . . . Appellate counsel did not file a petition for certification within the time specified by the Connecticut Supreme Court.

Over four years later, on May 15, 2008, [Abrahams] filed a *pro se* motion seeking permission to file a late petition for certification to appeal the decision of the Connecticut Appellate Court affirming his conviction. . . . On June 3, 2008, the Connecticut Supreme Court denied the motion without comment. . . .

### C. First State Habeas Petition & Appeal

On March 5, 2002, before the direct appeal of his convictions became final, [Abrahams] filed his first state habeas corpus petition in the Connecticut

[6] "Neither [Abrahams], nor the respondent . . . asserted that [Abrahams] appealed his 2001 conviction for a violation of probation or the five-year sentence imposed pursuant to that conviction by a judge in *State v. Abrams*, Case No. D03D-CR97-0131949-T." *Abrams*, 2019 WL 919581, at *2 n. 2.

[7] The order denying Abrahams' motion for reconsideration and reconsideration *en* banc was dated January 14, 2004, and notice was sent on January 15, 2004. *See* Order, No. 17-cv-1732-MPS (D. Conn. Mar. 29, 2018), App. to Resp't Mot. to Dismiss 9, ECF No. 19-9.

Superior Court for the Judicial District of New Haven. . . . [Abrahams] filed three amended petitions. . . . The operative third amended petition filed on September 17, 2003, asserted one claim, ineffective assistance of trial counsel,. . . . On February 28, 2005, after a hearing, the judge denied the amended petition. . . .

[Abrahams] timely filed an appeal from the denial of the habeas petition. . . . The court appointed a special public defender to represent [Abrahams] on appeal and counsel subsequently filed a brief in support of the appeal raising one issue, ineffective assistance of counsel at sentencing. . . . September 27, 2006, [Abrahams'] special public defender withdrew the appeal before the Connecticut Appellate Court rendered a decision. . . .

### D. Second State Habeas Petition & Appeal

On September 30, 2004, [Abrahams] filed a second state habeas corpus petition in the Connecticut Superior Court for the Judicial District of Tolland at Rockville. . . . On April 2[4][8], 2007, counsel for [Abrahams] filed an amended petition asserting claims of ineffective assistance of habeas counsel. . . . On December 31, 2007, [Abrahams] filed a motion seeking leave to file a second amended petition to include claims of ineffective assistance of trial counsel. . . . On January 2, 2008, a judge held an evidentiary hearing to address the claims filed in first amended petition. . . . At the beginning of the hearing, the judge denied [Abrahams'] motion to amend and denied his request for a continuance. . . . On April 8, 2008, a state court judge denied the amended petition for writ of habeas corpus. . . .

On May 23, 2008, [Abrahams] filed an appeal of the denial of his second habeas petition to the Connecticut Appellate Court. . . . On appeal, appellate counsel did not challenge the decision of the state court regarding the merits of the [Abrahams'] claims of ineffective assistance of habeas counsel. Instead, counsel argued that the trial court had abused its discretion in denying the petition for certification to appeal, erred in not allowing [Abrahams] to amend the petition on the day of trial and denying [Abrahams'] request for a continuance, and erred in failing to inquire whether a conflict of interest existed between the [Abrahams] and habeas counsel. . . .

On February 16, 2010, the Connecticut Appellate Court dismissed the appeal. . . .On March 30, 2010, the Connecticut Supreme Court denied certification to appeal from the decision of the Connecticut Appellate Court. . . .

---

[8] The amended petition was mailed on April 24, 2007, and docketed on April 26, 2007. *See* Am. Pet., *Abrams*, No. 17-cv-01732-MPS (Mar. 29, 2018), App. to Resp't Mot. to Dismiss 26, ECF No. 19-26.

### E. Third State Habeas Petition & Dismissal

On March 20, 2008, [Abrahams] filed a third state habeas corpus petition in the Connecticut Superior Court for the Judicial District of Tolland at Rockville [bearing doc. no. CV08-4002319-S]. . . . A judge dismissed the petition on April 2, 2008, and [Abrahams] did not appeal the dismissal. . . .

### F. Motions to Correct Illegal Sentence & Appeal

On January 19, 2006, [Abrahams] filed a motion to correct illegal sentence. . . . On September 1, 2006, [Abrahams] filed a second motion to correct illegal sentence. . . .The first motion raised four grounds. . . .The second motion to correct illegal sentence raised one ground: whether [Abrahams'] convictions and sentences for assault in the first degree and criminal possession of a firearm constituted a double jeopardy violation. . . .

At a hearing held on February 2[3], 2007 to address the first motion to correct illegal sentence, [Abrahams] withdrew two of the four grounds asserted in the motion and proceeded only on the ground that his convictions and sentences for attempted murder and assault in the first degree violated the Double Jeopardy Clause of the Fifth Amendment and on the ground that the sentence imposed pursuant to [his] conviction for a violation of probation was illegal or improper because the trial court lacked jurisdiction to adjudicate the violation of probation charge. . . .[9] On April 2, 2007, the court denied the first motion to correct illegal sentence because the convictions for attempted murder and first degree assault were not the same offenses for double jeopardy purposes and the sentence imposed pursuant to the conviction for a violation of probation was not eligible for review in a motion to correct sentence, and even if it was eligible for review, it lacked merit. . . .

On April 9, 2008, a different judge permitted [Abrahams] to reargue the double jeopardy claim raised in the first motion to correct illegal sentence. . . . At the end of the hearing on April 9, 2008, the second judge denied the first motion to correct illegal sentence. . . .

[Abrahams] appealed the orders denying the first motion to correct illegal sentence on the ground that the trial judges had erred in concluding that his sentences for attempted murder, first degree assault, and criminal possession of a firearm did not violate the Double Jeopardy Clause of the Fifth Amendment. . . . . On October 20, 2009, the Connecticut Appellate Court issued a *per*

[9] The hearing was held on February 23, 2007. *See* Hearing Tr., *Abrams*, No. 17-cv-1732-MPS (Mar. 29, 2018), Feb. 23, 2007, App. to Resp't Mot. to Dismiss 65, ECF No. 19-73.

*curiam* decision affirming the judgment of the trial court without comment. . . . On January 14, 2010, the Connecticut Supreme Court denied certification to appeal from the decision of the Connecticut Appellate Court. . . .

### G. Fourth State Habeas Petition & Appeal

On December 11, 2009, [Abrahams] filed a fourth state habeas corpus petition in the Connecticut Superior Court for the Judicial District of Tolland at Rockville [bearing doc. no. CV10-4003316-S]. . . . In an amended petition filed on June 16, 2012, [Abrahams] asserted claims of ineffective assistance of trial counsel, appellate counsel and habeas counsel. . . . On November 13, 2012, after an evidentiary hearing, the court denied the amended petition. . . .[10]

[Abrahams] timely filed an appeal from the denial of the habeas petition. . . . On April 8, 2014, the Connecticut Appellate Court issued a *per curiam* decision dismissing the appeal without comment. . . . On May 29, 2014, the Connecticut Supreme Court denied certification to appeal from the decision of the . . . Appellate Court. . . .

### H. First § 2254 Petition & Dismissal

On April 1, 2010, [Abrahams] filed a petition for writ of habeas corpus in this court challenging his 2001 convictions. . . . The respondent moved to dismiss the petition on the ground[s] that it contained exhausted and unexhausted claims. . . . . On December 8, 2010, the court granted the motion to dismiss because the petition was a mixed petition containing one exhausted claim, the double jeopardy violation, and three unexhausted claims, ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and prosecutorial misconduct. . . .The dismissal of the petition was without prejudice to Abrahams filing a new federal petition after he had exhausted his available state court remedies as to the unexhausted claims. . . .

### I. Fifth State Habeas Petition

[10] "For clarification purposes, it should be noted that, in the body of its decision, the habeas trial court (*Sferrazza, J.*) refers to [Abrahams'] action as 'the third habeas corpus action pursued by the petitioner.'" *See* Resp't Mem. in Support of Mot. to Dismiss, *Abrams v. Comm'r of Corr*., No. 3:17-cv-01732-MPS (D. Conn. Mar. 29, 2018), ECF No. 19 at 28 n.14 (quoting *Abrams v. Warden*, State Prison, No. TSRCV104003316S, 2012 WL 5992687, at *1 (Conn. Super. Ct. Nov. 13, 2012)). However, this was Abrahams' fourth state habeas action, not his third. Abrahams' third habeas petition was filed in the case bearing doc. no. CV08-4002319-S, and was dismissed by the court, *sua sponte*, without a hearing. *See* Dismissal, *Abrams*, No. 3:17-cv-01732-MPS (D. Conn. Mar. 29, 2018), App. to Resp't Mot. to Dismiss 35, ECF No. 19-35.

> On January 17, 2014, [Abrahams] filed a fifth state habeas corpus petition in the Connecticut Superior Court for the Judicial District of Tolland at Rockville [bearing doc. no. CV14-4006053-S]. . . . In an amended petition filed on October 27, 2016, [Abrahams] asserted a claim that appellate counsel was ineffective on appeal from the denial of the first state habeas petition and a claim that second habeas counsel and fourth habeas counsel were ineffective in failing to raise the claim of ineffective assistance of first appellate habeas counsel. . . . On July 12, 2017, after an evidentiary hearing, the court denied the amended petition. . . .[11] On August 7, 2017, [Abrahams] filed an appeal of the decision denying the fifth state habeas petition. . . .[12] .
>
> **J. Second § 2254 Petition**
>
> On October 13, 2017, [Abrahams] initiated [his second federal habeas action] challenging his 2001 Connecticut convictions and sentences for attempted murder, assault in the first degree, criminal possession of a firearm, commission of a Class A, B, or C felony with a firearm, and a violation of probation. . . . respondent moved to dismiss the petition on March 29, 2018.

*Abrams*, 2019 WL 919581, at *1-6.

On February 25, 2019, the Court issued a ruling granting the respondent's motion to dismiss Abrahams' second § 2254 petition because all four grounds for relief in the petition contained exhausted and unexhausted sub-claims. *See id.* at *13-14, 16.

On February 25, 2019, the date the respondent's motion to dismiss the second § 2254 petition was granted, the one-year limitations period under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") had not yet begun to run because Abrahams had

---

[11] "Likewise, for clarification purposes, it bears noting that, in its decision, the habeas trial court (*Oliver, J.*) refers to this as petitioner's 'fourth petition for writ of habeas corpus.'" *See* Resp't Mem. in Support of Mot. to Dismiss, *Abrams v. Comm'r of Corr.*, No. 3:17-cv-01732-MPS (D. Conn. Mar. 29, 2018), ECF No. 19, at 36 n.17 (quoting *Abrahams v. Warden*, No. CV144006053S, 2017 WL 3480998, at *1 (Conn. Super. Ct. July 12, 2017), *aff'd sub nom. Abrams v. Comm'r of Correction*, 192 Conn. App. 850 (2019)). However, this was Abrahams' fifth state habeas action, not his fourth. Abrahams fourth state habeas petition was filed on December 11, 2009, bearing doc. no. CV10-4003316-S.

[12] At the time Abrahams' second § 2254 petition was dismissed, his appeal of the decision denying his fifth state habeas petition remained pending.

multiple overlapping filings in state court and a pending appeal of his fifth state habeas petition. *See id*. On February 26, 2019, the Court entered judgment dismissing Abrahams' second § 2254 petition. *See* J. of Dismissal, *Abrams*, No. 3:17-1732 (MPS) (D. Conn. Feb. 26, 2019), ECF No. 32.

**2. Procedural History since the Court's Ruling on Second § 2254 Petition**

**A. Appeal of Fifth State Habeas Petition**

On September 17, 2019, the Connecticut Appellate Court affirmed the judgment of the trial court denying Abrahams' fifth state habeas action. *See Abrams v. Comm'r of Corr.*, 192 Conn. App. 850, 863 (2019). Abrahams sought discretionary review in the Connecticut Supreme Court, and his petition for discretionary review was denied on November 6, 2019. *See Abrams v. Comm'r of Corr.*, 333 Conn. 939 (2019).

**B. Ruling on Sixth State Habeas Petition**

On August 16, 2021, over two years after Abrahams had initiated a sixth state habeas action assigned docket number TSR-CV18-4009480-S, *see* State Court Docket Sheet, ECF No. 15-1, he filed an amended petition in which he assigned a number of errors to his trial and first three state habeas attorneys, as well as his third and fourth state habeas appellate attorneys, *see* Am. Sixth State Habeas Pet., App. to Resp't Mem. B, ECF No. 15-2. Abrahams also included a claim that the State failed to disclose exculpatory evidence. *Id*. at 9. On June 20, 2023, the state habeas court dismissed Abrahams' sixth state habeas action due to Abrahams' failure to appear and prosecute the action. *See* State Court J. of Dismissal, ECF No. 15-3.

**C. Application to Modify Sentence and Order under Connecticut General Statutes § 53a-39**

On May 23, 2024, Abrahams filed an Application to Modify Sentence and Order under Connecticut General Statutes ("Conn. Gen. Stat.") § 53a-39 (the "Sentence Modification Application" or the "Application") in his criminal case in the Superior Court for the Judicial District of Danbury, Case No. DBD-CR00-0110691-S. *See* Sentence Modification Appl., ECF No. 15-4. In the Sentence Modification Application, Abrahams requested that the Superior Court reduce his sentence from fifty-one years followed by nine-years special parole to twenty-years of incarceration, or alternatively, to provide him with any relief the Court found to be appropriate. *See* Mem. in Support of Sentence Modification Appl., ECF No. 15-9. He brought his Application on the grounds that there was good cause to reduce his sentence because he: (A) demonstrated exceptional conduct during his incarceration; (B) had addressed his personal shortcomings that contributed to his conduct and was remorseful and ashamed of his conduct; and (C) had a stable re-entry plan to ensure his success. *See id*. at 2-16. A hearing was held on Abrahams' Sentence Modification Application on March 17, 2025, *see* Hearing Tr., ECF No. 15-5, and following the hearing, Abrahams' Application was denied by the criminal court by a Memorandum of Decision dated April 21, 2025, *see* State Court Mem. of Decision, ECF No. 15-6.

### D. Application for Waiver of Fees, Costs and Expenses and Appointment of Counsel

On May 12, 2025, Abrahams' attorney filed an Application for Waiver of Fees, Costs and Expenses and Appointment of Counsel on Appeal ("Fee Waiver and Counsel Application") in Abrahams' criminal case in the Superior Court for the Judicial District of Danbury, Case No. DBD-CR00-0110691-S, in order to appeal the April 21, 2025 denial of Abrahams' Sentence Modification Application. *See* Fee Waiver & Counsel Appl., ECF No. 23

at 58. On October 16, 2025, during a remote hearing at which Abrahams was present, the Connecticut Superior Court granted Abrahams' request for waiver of fees, costs and expenses, but denied Abrahams' request to have counsel appointed. *Id.* at 59-60. A review of the Connecticut State Appellate and Supreme Court dockets show that Abrahams does not have a pending appeal.[13]

### E. Abrahams' Third Federal Habeas Corpus Petition & Subsequent Pleadings

On June 3, 2023, the Court of Clerk in the District of Connecticut received Abrahams' federal habeas petition, which was dated and signed on May 20, 2025. *See* Pet. 26. In the petition, Abrahams raises two grounds for relief. Pet. 14, 15. In Ground One, Abrahams asserts a double jeopardy violation with two sub-claims: (a) that his conviction and sentence for attempted murder arises from the same set of facts as his convictions for assault in the first degree and criminal possession of a firearm; and (b) that his sentence is greater than the time to which he was "exposed." Pet. 14. In Ground Two, Abrahams also asserts two sub-claims: (a) that his sentence was discriminatory and disproportionate because he was exposed to a total effective sentence of fifty-five years, but received a sixty-year sentence; and (b) that there is no case in Connecticut where a defendant with the same convictions as him received more than a twenty-five-year sentence. Pet. 16.

[13] I may take judicial notice of state court records. *Velasco v. Gonclavez*, No. 3:21-CV-1573 (MPS), 2022 WL 19340, at *2 n.2 (D. Conn. Jan. 3, 2022). A search of the Connecticut State Court Appellate/Supreme court docket for "David Abrahams" and "David Abrams" reveals that there is no current record of a pending appeal. *See* Case Look-up, https://appellateinquiry.jud.ct.gov/SearchResults.aspx?CallingPage=PartyName&PN=abrahams&C=&CS=All&SD=&ED= (Last visited September 22, 2026).

In response to the Court's order to show cause, Respondent moved to dismiss the petition arguing that the petition is time-barred, and alternatively, that Ground One in the petition contains both exhausted and unexhausted sub-claims and Ground Two is entirely unexhausted. *See* Resp't Mot. to Dismiss, ECF No. 14. Abrahams filed an opposition to Respondent's Motion to Dismiss, claiming that his petition is timely because his Sentence Modification Application and Fee Waiver and Counsel Application tolled the limitations period under AEDPA, and he also claims that both grounds for relief as set forth in his petition are exhausted. *See* Pet'r Opp'n, ECF No. 18. Respondent has not filed a reply to the motion to dismiss.

## II. STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by AEDPA." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). That statute provides that a federal court cannot grant habeas relief unless "(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1).

In reviewing a motion to dismiss a petition for writ of habeas corpus, the Court applies the same standard as when reviewing a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6). *Spiegelmann v. Erfe*, No. 17-CV-2069, 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018). To survive dismissal, the petition must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Because Abrahams filed his habeas petition *pro se*, I construe his filings "liberally" and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). But "[d]espite the special solicitude that the court must show [Abrahams] out of consideration for his pro se status, his petition must still include sufficient factual allegations to meet the standard of facial plausibility to survive a motion to dismiss under Rule 12(b)(6)." *Anderson v. Williams*, No. 15-CV-1364, 2017 WL 855795, at *6 (D. Conn. Mar. 3, 2017) (citation modified).

In considering a motion to dismiss, I typically may consider only the complaint, or in this case, the petition. However, the petition "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," as well as any documents deemed "integral" to the petition. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citation modified); *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). To that end, because the petition relies on the various state court proceedings underlying the procedural history of this case, I will consider the documents relevant to those proceedings. *See Fulcher v. Connecticut*, No. 23-CV-570, 2025 WL 2403041, at *3 (D. Conn. Aug. 19, 2025) (taking judicial notice of habeas state cases); *see also Vializ v. Arnone*, No. 11-CV-1636, 2012 WL 3000406, at *1 (D. Conn. July 20, 2012).

## III. DISCUSSION

Respondent raises two arguments in support of the Motion to Dismiss: (1) that the Petition is barred by the one-year statute of limitations under AEDPA, and (2) that Ground One of the Petition contains an exhausted and unexhausted claim and Ground Two contains claims that are entirely unexhausted. *See* Mot. to Dismiss. I address each of Respondent's arguments in turn.

**1. AEDPA Statute of Limitations for Federal Habeas Corpus Petitions**

AEDPA imposes a one-year statute of limitations on the filing of a federal petition for a writ of habeas corpus challenging a state court judgment of conviction. *See* 28 U.S.C. § 2244(d)(1). As relevant here, a state prisoner seeking federal habeas relief must file his petition within one year of "(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[14] The limitations period may be tolled for the period "during which a properly filed" state habeas petition or other motion, application or petition for collateral review "is pending."[15] *See* 28 U.S.C. § 2244(d)(2); *see also Carniero v. Chapdelaine*, No. 3:10-CV-1510 AVC, 2012 WL 878802, at *2 (D. Conn. Mar. 14, 2012) ("The statute of limitations began to run again on October 4, 2008, *the day after* the Connecticut supreme court denied the petition for certification to appeal the denial of the state habeas petition.") (emphasis added). Notably, however, the one-year limitation period "is *not* tolled during the pendency of a federal habeas petition." *Lopez v. Quiros*, No. 3:22-CV-565 (SVN), 2023 WL 2384112, at *11 (D. Conn. Mar. 6, 2023) (emphasis added) (citing *Duncan v. Walker*, 533 U.S. 167, 181 (2001)).

As an initial matter, both Respondent and Abrahams agree that the limitations period for bringing this federal habeas corpus action began to run for the very first time after

[14] The statute provides alternative dates on which the limitations period might begin to run, none of which are applicable here. 28 U.S.C. § 2244(d)(1)(B-C).

[15] The one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) may also be equitably tolled, but only in extraordinary and limited circumstances. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (holding that equitable tolling applies to section 2244(d) because, *inter alia*, it is a statute of limitations and not a jurisdictional requisite). Given that I find the petition to be timely without equitable tolling, I do not reach the question of whether equitable tolling applies here.

Abrahams' sixth state habeas action was dismissed on June 20, 2023. *See* Resp't Mem. 17, ECF No. 15; *see also* Pet'r Opp'n 5, ECF No. 23. The parties disagree, however, as to whether this federal habeas action was timely filed, and more specifically, the parties disagree as to the filing date of this habeas corpus petition and whether Abrahams' Sentence Modification Application tolled the AEDPA limitations period. Resp't Mem. 17-22; *see also* Pet'r Opp'n 5-15. Finally, Abrahams also argues that his Fee Waiver and Counsel Application tolled the AEDPA limitations period. *See* Pet'r Opp'n 16.

**A. Filing Date of Federal Habeas Petition**

Abrahams contends that his federal habeas petition was filed on May 20, 2025, the date he signed and mailed the petition. Pet'r Opp'n 16. In contrast, Respondent asserts that Abrahams' federal habeas petition was filed on June 3, 2025, the date the petition was received by the Clerk of Court for filing. *See* Resp't Mem. 17.

Pursuant to the "prison mailbox rule," a *pro se* prisoner's complaint is deemed to be filed when it is delivered to prison officials for transmittal to the court. *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), *opinion modified on reh'g*, 25 F.3d 81 (2d Cir. 1994). This rule is an equitable rule "justified by the litigant's dependence on the prison mail system and lack of counsel to assure timely filing with the court." *Noble v. Kelly,* 246 F.3d 93, 97 (2d Cir. 2001) (citing *Houston v. Lack,* 487 U.S. 266, 270–71 (1988)). The purpose of the rule is to offset the "unique difficulties" that *pro se* prisoners encounter when attempting to file papers, as they "cannot personally ensure receipt of [their] legal documents by the court clerk . . . [or] even place [their] complaint[s] directly into the hands of the United States Postal Service." *Dory*, 999 F.2d at 682.

The prison mailbox rule has expanded to include a *pro se* prisoner's filing of a habeas petition in federal court. *Noble*, 246 F.3d at 97-98. Thus, for purposes of determining the timeliness of a petitioner's claims, "a court must look to the date a *pro se* prisoner gave his petition to prison officials to be mailed to the clerk for filing, rather than the date the petition was actually received and stamped as filed by the clerk." *Pires v. Walker*, No. 3:18-CV-1726 (SVN), 2022 WL 168784, at *2 (D. Conn. Jan. 18, 2022) (deeming federal habeas petition to have been filed on the date petitioner stated that he signed the petition and handed it to prison officials for mailing to the court).

Abrahams attests that he dated, declared, and mailed his federal habeas petition on May 20, 2025. Pet'r Opp'n 16. A review of the habeas petition reflects that it was signed under penalty of perjury and dated May 20, 2025. *See* Pet. 26. Along with the habeas petition, Abrahams included a letter dated May 20, 2025, with a check enclosed for the filing fee, in which he states that it usually takes the facility approximately ten days to send out mailings, and he wanted to ensure his petition was timely. ECF No. 1-1, at 1. Under the prison mailbox rule, I consider Abrahams' petition to have been filed on May 20, 2025, the date Abrahams states that he signed the petition and handed it to prison officials for mailing.

**B. Sentence Modification Application under Conn. Gen. Stat. § 53a-39**

Next, Respondent argues that even though Abrahams' Sentence Modification Application was collateral to the direct review process, the Application did not toll the AEDPA limitations period because it did not seek review with respect to the pertinent judgment or claim. Resp't Mem. 18. Abrahams disputes this contention. *See* Pet'r Opp'n 6-15. I agree with Abrahams. Supreme Court precedent strongly suggests that Abrahams' Sentence Modification Application is a "properly filed application for State post-conviction or other collateral review

with respect to the pertinent judgment or claim," and thus, does toll the limitations period. 28 U.S.C. § 2244(d)(2).

In Connecticut, "the legislature has granted criminal courts continuing statutory authority to make changes to a duly imposed sentence in two ways," by either authorizing courts to conduct a sentence review pursuant to Conn. Gen. Stat. § 51-196, or by allowing a criminal defendant to seek a sentence modification of or discharge from his sentence pursuant to Conn. Gen. Stat. § 53a-39. *State v. Martin G.*, 222 Conn. App. 395, 406-07 (2023). Abrahams filed his Sentence Modification Application in his criminal case, Case No. CR00-0116091-S, under Conn. Gen. Stat. § 53a-39, which provides that "at any time during an executed period of incarceration, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which the defendant could have been originally sentenced." Conn. Gen. Stat. § 53a-39(a). "Through the enactment of § 53a-39, the [Connecticut] legislature has determined that a court has competence to entertain sentence modifications and, thus, has conferred upon the court jurisdiction to modify a sentence." *State v. Barnes*, 227 Conn. App. 760, 770, *cert. denied*, 350 Conn. 922 (2024).

When reviewing a Sentence Modification Application under § 53a-39, the Connecticut Supreme Court has confirmed that the trial court can consider such factors as:

> (1) the gravity of [the] crime; (2) correctional record and length of time incarcerated; (3) [the defendant's] age and circumstances at the time of the commission of the crime; (4) whether [the defendant] has demonstrated remorse and increased maturity since the date of the offense; (5) whether [the defendant] has contributed to the welfare of other persons through service while incarcerated; and (6) the degree in which [the defendant] has fully availed himself of opportunities for growth, rehabilitation, and contribution within the

> correctional system considering the nature and circumstances of the crime [the defendant] committed.

*Martin G.*, 222 Conn. App. 395, 405.

Abrahams' Sentence Modification Application under § 53a-39 constitutes a properly filed application for collateral review with respect to his 2001 judgment and sentence under relevant Supreme Court and Second Circuit precedent.

In *Wall v. Kohli*, 562 U.S. 545, 550 (2011), the U.S. Supreme Court considered whether a petitioner's motion to reduce sentence under Rule 35 of the Rhode Island Rules of Criminal Procedure constituted an application for collateral review. The petitioner in *Wall* had brought a Rule 35 motion in state court to reduce his sentence, "which permits a trial justice to decide 'on reflection or on the basis of changed circumstances that the sentence originally imposed was, for any reason, unduly severe.'" *Id*. at 554 (quoting *State v. Ruffner,* 5 A.3d 864, 867 (R.I. 2010)) (citation modified). The Supreme Court opined that, "[n]ot only is a motion to reduce sentence under Rhode Island law 'collateral,' but it also undoubtedly calls for 'review' of the sentence" because "[t]he decision to reduce a sentence . . . involves judicial reexamination of the sentence to determine whether a more lenient sentence is proper." *Id*. at 555-56. The Court observed that the trial justice is guided by several factors when ruling on a Rule 35 motion, such as "(1) the severity of the crime, (2) the defendant's personal, educational, and employment background, (3) the potential for rehabilitation, (4) the element of societal deterrence, and (5) the appropriateness of the punishment." *Id*. at 556 (citation modified). The Court thus concluded that consideration of a Rule 35 motion was a "'review' of a sentence within the meaning of § 2244(d)(2)" and thus "a motion to reduce sentence under Rhode Island

law [was] an application for 'collateral review' that trigger[ed] AEDPA's tolling provision." *Id*. at 556.

Thereafter, in *Collins v. Ercole*, 667 F.3d 247, 251 (2d Cir. 2012), the Second Circuit considered whether an Article 78 petition brought in New York state court that challenged a determination by New York State Department of Correctional Services ("DOCS") tolled the AEDPA limitations period. The petitioner in *Ercole* had been convicted of robbery in 1998 in New York State Court and sentenced to an indeterminate prison term of 7 to 14 years, was then released on parole, and subsequently convicted in 2001 on two counts of murder and one count of attempted murder. *Id*. at 248. After sentencing, the petitioner brought an application under Article 78 in state court, arguing that DOCS, the New York agency charged with administering his prison term, incorrectly decided that the undischarged portion of his 1998 sentence should run consecutively to his 2001 sentence. *Id*. at 248-49. The petitioner then brought a federal habeas action challenging his 2001 judgment and conviction on various grounds and arguing that his Article 78 petition tolled the AEDPA limitations period. *Id*. at 249.

The Second Circuit applied the holding in *Wall*, and opined that, "[r]ead straightforwardly. . . 'review' occurs when a reviewing court reconsiders the work of the original court to correct any error or infelicity committed by that original court—or rather, submits that original court's work to examination for potential revision." *Id*. at 251. The petitioner's Article 78 petition did not fall within those confines—the petitioner had sought examination and amendment of the DOCS' "understanding of the legal interaction between the pertinent judgment and a state statute requiring that his undischarged sentence on the robbery conviction be served consecutively with his sentence under the pertinent judgment."

*Id*. Thus, the petitioner had not sought reexamination of any element of his 2001 judgment and conviction, and his Article 78 petition did not toll the limitations period. *Id*.

Here, Respondent compares Abrahams' Sentence Modification Application to the petitioner's Article 78 application in *Ercole* to argue that Abrahams' Application "did not seek review of either the judgment of conviction or the originally-imposed sentence itself." Resp't Mem. 20-21. However, in *Ercole*, the petitioner did not seek to challenge or invalidate the sentence from the 2001 conviction and judgment but instead sought to challenge the agency's interpretation of the effect that the sentence from his 2001 judgment should have on the undischarged portion of his 1998 sentence for robbery. *See Ercole*, 667 F.3d 247. Unlike in *Ercole*, in Abrahams' Sentence Modification Application, he sought review of the sentence resulting from his 2001 judgment by requesting that the state trial court reexamine and reduce his sentence. *See* Mem. in Support Sentence Modification Appl. 2-16, ECF No. 15-9.

Respondent also argues that Abrahams' Sentence Modification Application was not a "review of either the judgment of conviction or the originally-imposed sentence itself" because Abrahams' bases for seeking sentence modification, such as his improved disposition and good behavior, "are prospective" and "based upon . . . changed circumstances." Resp't Mem. 21. I disagree. As discussed, Rule 35 of the Rhode Island Rules of Criminal Procedure permitted courts to reduce a sentence "on reflection *or on the basis of changed circumstances.*" *Wall*, 561 U.S. at 554 (emphasis added) (citation modified). Thus, the Supreme Court has explicitly held that a state rule authorizing sentence reduction based on changed circumstances may constitute "collateral review" for purposes of AEDPA' tolling provision.

Abrahams' Sentence Modification Application is similar to the petitioner's Rhode Island Rule 35 motion to reduce sentence in *Wall*. Both Abrahams and the petitioner in *Wall*

sought to reduce their sentence on the basis of changed circumstances. *See id.* at 554. And several factors considered by the Rhode Island trial court when evaluating a Rule 35 motion to reduce sentence are similar to factors considered by the Connecticut trial court when ruling on a Sentence Modification Application under § 53a-39. Of further importance, there are only "a limited number of circumstances in which the [Connecticut] legislature has conferred on the trial courts continuing jurisdiction to act on their judgments after the commencement of sentence," with one of these limited circumstances including a defendant's ability to request a modification of sentence under § 53a-39. *State v. Lawrence*, 281 Conn. 147, 153-54 (2007) (collecting statutes and cases and including an application under § 53a-39 as one of the circumstances where a trial court has continuing jurisdiction to act on its judgment after commencement of a sentence).

Therefore, a Sentence Modification Application under § 53a-39 is not only collateral, but also calls for judicial reexamination and review of the sentence to determine whether a more lenient sentence is proper. *See Wall*, 562 U.S. at 556-57. Accordingly, Abrahams' Sentence Modification Application under § 53a-39 tolled the AEDPA limitations period.

### C. AEDPA's Limitation Period

Respondent further argues that even if Abrahams' Sentence Modification Application tolled the AEDPA limitations period, the Application was not pending for enough time to alter the conclusion that the petition is untimely. Resp't Mem. 22. In opposition, Abrahams asserts that his petition is timely because it was filed on May 20, 2025, not the June 3, 2025 date Respondent had used to calculate the limitations period, and he also contends his Fee Waiver and Counsel Application tolled the limitations period. Pet'r Opp'n 15-17. For the following reasons, I conclude that Abrahams' federal habeas petition is timely.

In cases where there are statutory tolling periods, the AEDPA limitations period is calculated in terms of days, and not by the one-year limit. *See Clemente v. Lee*, 72 F.4th 466, 476 (2d Cir. 2023) ("[O]n December 27, 2012, AEDPA's statute of limitations paused with 159 days remaining on the clock.); *see also Smith v. McGinnis,* 208 F.3d 13, 16 (2d Cir.2000) (holding that, where the limitations period "[had run] for 364 days," petitioner "had one day remaining . . . in which to file the . . . habeas petition.").

To begin calculating the statutory limitations period, the date a state-court petition is filed is excluded from the AEDPA limitations period, or in other words, included in the tolling period. *See Clemente*, 72 F.4th at 476; *see also Chrysler v. Guiney*, 14 F. Supp. 3d 418, 439-43 (S.D.N.Y. 2014), *aff'd,* 806 F.3d 104 (2d Cir. 2015). The date on which a state court issues a final judgment, or the date on which a petitioner's ability to seek a discretionary appeal expires, is also excluded from the limitations periods, or in other words, is also part of the tolling period. *See Chrysler*, 14 F. Supp. 3d at 443 ("[The Court] exclude[es] the date on which a state court issues a final judgment resolving a post-conviction motion [because this exclusion] is in line both with Second Circuit precedent declaring the final-judgment day as the end of the tolling period, . . . and with Second Circuit precedent applying Federal Rule of Civil Procedure 6 to AEDPA limitations-period calculations.").

Furthermore, "AEDPA's statutory tolling provision provides that the 'time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.'" *Clemente*, 72 F.4th at 476 (quoting 28 U.S.C. § 2244(d)(2)). "[A] state-court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures."

*Id*. (concluding that when the state trial court denied the petitioner's motion to vacate on April 18, 2013, the limitations period did not begin to run again until May 18, 2013—the date on which the petitioner's time to seek a discretionary appeal in the Appellate division expired) (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4, 213 (2000)) (citation modified). Accordingly, the AEDPA limitations period begins to run after the conclusion of time for which further appellate review is unavailable, regardless of whether a petitioner actually utilized the discretionary appeal process. *See id.*; *see also Pers. v. Sieminski*, No. 3:04-CV-1755 (WIG), 2005 WL 2225929, at *2 (D. Conn. Sept. 9, 2005) (noting that where the petitioner did not appeal, the petitioner's limitations period began to run again on February 10, 2004, twenty days after the court denied the petition on January 20, 2004).

To reiterate, the following procedural history is relevant to the calculation of the AEDPA limitations period. Abrahams' sixth state habeas petition was denied on June 20, 2023, for failure to appear and prosecute. *See* State Court J. of Dismissal, ECF No. 15-3. Abrahams then filed his Sentence Modification Application on May 23, 2024, *see* Sentence Modification Appl., ECF No. 15-4, and the Application was denied on April 21, 2025, *see* State Court Mem. of Decision, ECF No. 15-6. On May 12, 2025, Abrahams filed his Fee Waiver and Counsel Application. *See* Fee Waiver & Counsel Appl., ECF No. 23, at 58. On May 20, 2025, Abrahams signed his § 2254 petition and handed it to prison officials for mailing. ECF No. 1. Then, on October 16, 2025, Abrahams' Fee Waiver and Counsel Application was denied. *See* Fee Waiver & Counsel Appl., ECF No. 23, at 59-60. A search for Abrahams in the Connecticut

Superior, Appellate, and Supreme court case dockets shows that Abrahams does not have any pending appeal, nor pending state post-conviction proceeding.[16]

First, there are 337 days between June 20, 2023, the date Abrahams' sixth habeas petition was dismissed, and May 23, 2024, the date he filed his Sentence Modification Application. As noted above, the AEDPA limitations period begins to run after the conclusion of time for which further appellate review is unavailable. *See Clemente*, 72 F.4th at 476. Because Abrahams' Sixth State Habeas petition was dismissed as a result of his failure to appear and failure to prosecute, it is not clear whether a dismissal based on these grounds encompasses a discretionary appeal period. Nevertheless, even assuming Abrahams could not appeal the dismissal of his sixth habeas action, his petition would still be timely. Assuming there was no discretionary appeal period for a dismissal for failure to prosecute, there would be 337 days of untolled time between June 20, 2023, the date Abrahams' sixth state habeas petition was denied, and May 24, 2023, the date Abrahams filed his Sentence Modification Application.

Next, Abrahams' Sentence Modification Application was denied on the merits on April 21, 2025. In Connecticut, "[u]nless a different time period is provided by statute, an appeal must be filed within twenty days of the date notice of the judgment or decision is given." Conn. Practice Book § 63-1(a). The appeal period begins on the day notice of the judgment is given in open court, and if notice is given only by mail or electronic delivery, the appeal period would begin on the day that notice was sent to counsel of record by the clerk of the trial court, or in this case, to Abrahams as a *pro se* litigant. *See id.* § 63-1(b). "The failure to give notice

[16] *See supra* note 13.

of judgment to a nonappearing party shall not affect the running of the appeal period." *Id*. "A decision is generally considered to be 'final' once the twenty-day appeal period following issuance of the decision has expired." *Franko v. Comm'r of Correction*, No. CV22-5001232-S, 2023 WL 370898, at *2 n.2 (Conn. Super. Ct. Jan. 19, 2023) (citing Practice Book § 63-1 Time to Appeal). Accordingly, Abrahams had at least twenty-days with which to appeal the denial of his sentence modification application, and thus, he had at least twenty additional days during which the AEDPA limitations period was tolled, until Monday, May 11, 2025.[17]

Here, Abrahams filed his federal habeas petition nine days later, on May 20, 2025. There are eight days between May 11, 2025, and May 20, 2025. Thus, Abrahams would have had only 345 total days of untolled time on the date he filed this federal habeas petition: (337 + 8 = 345 days).

Abrahams also claims that his Fee Waiver and Counsel Application tolled the AEDPA limitations period. In Connecticut, "[i]f, within the appeal period, any motion is filed, pursuant to Section 63-6 or 63-7, seeking waiver of fees, costs and security or appointment of counsel, a new twenty day appeal period or statutory period for filing the appeal shall begin on the day that notice of the ruling is given on the last such outstanding motion." Conn. Practice Book § 63-1(c)(1). However, regardless of whether Abrahams' Fee Waiver and Counsel Application

[17] "In determining the last day for filing any documents, the last day shall, and the first day shall not, be counted. Time shall be counted by calendar, not working, days. When the last day of any limitation of time for filing any document under these rules or an order of the court falls on a day when the office of the clerk of the trial court or of the appellate clerk is closed, the document may be filed on the next day when such office is open." Conn. Practice Book § 63-2.

extends the time for filing an appeal for purposes of the AEDPA limitations period, Abrahams' petition would be timely.

### 2. Exhaustion of State Court Remedies

Under AEDPA, a state prisoner seeking federal habeas review of his conviction ordinarily must first exhaust available state remedies. *See* 28 U.S.C. § 2254(b)(1)(A) (stating that a habeas petition shall not be granted "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State"). "Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (citation modified). The exhaustion doctrine "is animated by notions of comity between the federal and [s]tate judicial systems." *Carvajal*, 633 F.3d at 104.

"To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 354, 365–66 (1995); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). The petitioner must inform the state courts "about both the factual and legal bases for the federal claim." *Ramirez v. Att'y Gen. of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001).

A habeas petitioner need not cite "chapter and verse" to "alert the state court to the constitutional nature of a claim." *Ramirez*, 280 F.3d at 95. A habeas petitioner may, instead, include "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim

in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* (quoting *Daye v. Att'y Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982)).

To determine whether a federal habeas petitioner has exhausted his claims under the AEDPA, the Court must determine whether the Petitioner has both (1) fairly presented a claim before the state Supreme Court and (2) then raised the "substantial equivalent" of that claim in his federal habeas petition. *See Baldwin*, 541 U.S. at 29. In some instances, a federal habeas petition may be "mixed," meaning that it contains "both exhausted and unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005).

After thoroughly reviewing Respondent's Motion to Dismiss and Abrahams' Opposition, as well as the relevant state court and federal court records, I conclude that Abrahams' petition contains both exhausted and unexhausted claims.

**A. Partial Failure to Exhaust**

**i. Ground One – Double Jeopardy**

In Ground One of Abrahams' petition, Abrahams asserts that his convictions for assault in the first degree and criminal possession of a firearm should be merged with his conviction for attempted murder because his convictions for these offenses are all based on the same set of facts. *See* Pet. 14. He also maintains that he was given a sixty-year effective sentence even though he was only exposed to fifty-five years. *Id.*

As to Abrahams' first argument, Abrahams raised this same double jeopardy claim in his second federal habeas petition that he filed in Case No. 17-cv-1732. *See Abrams v. Comm'r of Corr.*, No. 3:17-CV-1732 (MPS), 2019 WL 919581, at *12 (D. Conn. Feb. 25, 2019) (stating

that the petitioner "asserts that his convictions and sentences for attempted murder, assault in the first degree and criminal possession of a firearm violate the Double Jeopardy Clause").

At the time the Court issued its ruling on the respondent's motion to dismiss, the Court concluded that this claim was only partially exhausted. *Id*. at *13. In particular, the Court concluded Abrahams had exhausted his claim that his convictions for attempted murder and assault in the first degree violated the Double Jeopardy Clause but had not exhausted his claim that his convictions for assault in the first degree and criminal possession of a firearm violated the Double Jeopardy Clause. The Court stated, in relevant part, as follows:

> The respondent acknowledges that [Abrahams] filed two motions to correct sentence in state court. In the first motion, [Abrahams] argued that the convictions and sentences for attempted murder and assault in the first degree violated the Double Jeopardy Clause of the Fifth Amendment. . . . In the second motion, [Abrahams] argued only that his convictions and sentences for assault in the first degree and criminal possession of a firearm violated the Double Jeopardy Clause of the Fifth Amendment.
>
> [Abrahams] appealed the orders denying the first motion to correct illegal sentence. . . . In his brief on appeal, he noted that the trial court had not ruled on his second motion to correct illegal sentence. . . . He asserted his double jeopardy claim as one claim addressed to his convictions for attempted murder, assault in the first degree and criminal possession of a firearm. . . . In the petition for certification to the Connecticut Supreme Court, however, he only argued that the convictions and sentences for attempted murder and assault in the first degree violated the Double Jeopardy Clause of the Fifth Amendment. . . . Thus, the second double jeopardy claim which is addressed to [Abrahams'] convictions for assault in the first degree and criminal possession of a firearm has not been fully exhausted.

*Id*.

I agree with Respondent that since the Court's February 25, 2019 ruling, Abrahams has not fully exhausted the double jeopardy claim he asserts in the instant petition. *See* Resp't Mem. 24. The only claim that Abrahams has brought for review before the Connecticut Supreme Court is the claim that his convictions for attempted murder and first-degree assault

violated the Double Jeopardy Clause of the Fifth Amendment. *See* Pet. for Cert. Review, No. 17-cv-1732-MPS (Mar. 29, 2018), App. to Resp't Mot. to Dismiss 41, ECF No. 19-41. Since the Court's decision in 2019, Abrahams has not brought any additional claims for review before the Connecticut Supreme Court.[18]

Abrahams points to his Petition to the Supreme Court for Certification for Review dated November 9, 2009, in which he stated, "Congress did not intend for a defendant to receive a harsher cumulative sentence of (41) years for attempted murder, assault first, & criminal possession of a firearm which [he] received." Pet'r Opp'n 19 (citing Pet. for Cert. Review, No. 17-cv-1732-MPS (Mar. 29, 2018), App. to Resp't Mot. to Dismiss 41, ECF No. 19-41, at 6). Abrahams argues that this statement is enough to constitute full exhaustion of the claim in the instant petition. Pet'r Opp'n 19-20. I disagree.

The entirety of Abrahams November 2009 Petition for Certification Review consists of one claim completely centered around an alleged double jeopardy violation pertaining to his convictions for attempted murder and first-degree assault. The mere mention of his firearm conviction does not suffice to alert the Connecticut Supreme Court to the substance of his claim. *See Ramirez*, 280 F.3d at 94-95. Accordingly, I conclude that Abrahams' double jeopardy claim pertaining to his convictions for attempted murder and first-degree assault is

---

[18] Abrahams' petition could be read to suggest that his sentence modification application, which was filed in 2024 and denied in 2025, exhausted his double jeopardy and discriminatory/disproportionate sentence claims. Pet. 15, 17. However, Abrahams' sentence modification application only contained arguments concerning his conduct during incarceration, his remorse and shame for his past actions, and his reentry plan. *See* Mem. in Support of Sentence Modification Appl. There are no mentions of the claims in this action. In addition, it does not appear Abrahams pursued an appeal of the denial. Therefore, the sentence modification application has not exhausted Abrahams' claims here.

exhausted, and that Abrahams' double jeopardy claim pertaining to his firearm conviction and other convictions is unexhausted.

As to Abrahams' second argument, he asserts he was given a sixty-year effective sentence, even though he was only exposed to fifty-five years. I construe this claim as an illegal sentence claim. Abrahams does not address this argument individually in his Opposition, and thus, it is not entirely clear whether Abrahams intended to bring this as a separate sub-claim. Regardless, Abrahams filed only one petition for certification review to the Connecticut Supreme Court on the basis of an illegal sentence, and as noted, that petition for review was centered around a double jeopardy claim as to his convictions for attempted murder and first-degree assault. *See* Pet. for Cert. Review, No. 17-cv-1732-MPS (Mar. 29, 2018), App. to Resp't Mot. to Dismiss 41, ECF No. 19-41. Thus, even if Abrahams intended for this claim to be brought as a claim separate from his double jeopardy claim, I conclude the claim is unexhausted.

**ii. Ground Two – Discriminatory/Disproportionate Sentence**

In Ground Two of Abraham's petition, he argues that his sentence was discriminatory and disproportionate. *See* Pet. 16-18; *see also* Pet'r Opp'n 25. Respondent has conducted a review of "the lengthy and voluminous record comprising" a myriad of Abrahams' claims, and Respondent has not found any claim raised in the state courts in which Abrahams alleged he received a discriminatory or disparate sentence or any other claim implicating the Eighth Amendment. Resp't Mem. 25. Respondent also asserts that Abrahams has not presented this claim to the Connecticut Supreme Court in the way he now presents this claim in his federal habeas petition. *Id*. Abrahams states he is not certain he exhausted this claim, and thus, leaves

Respondent to his proof. Pet'r Opp'n 25. As such, because there is no evidence presented that this claim has been exhausted, I conclude that this claim is unexhausted.

**B. Excusal of Exhaustion**

Exhaustion may be excused if the habeas petitioner can demonstrate that exhaustion would be futile. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). Exhaustion is futile when "there is an absence of available State corrective process," or when "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). "In other words, there must be *no opportunity* to obtain redress in state court or the state process must be *so clearly deficient* as to render *futile* any effort to obtain relief." *Jumpp v. Cournoyer*, No. 3:15-CV-00892 (VLB), 2016 WL 3647146, at *3 (D. Conn. June 30, 2016) (citing *Duckworth*, 454 U.S. at 3). Abrahams has utilized the state court forum on many occasions including by filing multiple state habeas corpus petitions, several motions to correct an illegal sentence, and a motion for sentence modification. There is nothing in the record to suggest that Abrahams should be excused from his exhaustion obligation due to a lack of "opportunity to obtain redress in state court" or that a state court "corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth*, 454 U.S. at 3; 28 U.S.C. § 2254(b)(1)(B).

**3. Dismiss, Stay, or Proceed**

To summarize, Abrahams has only partially exhausted one of his claims, specifically, the claim that his convictions for attempted murder and assault in the first degree violate the Double Jeopardy Clause of the Fifth Amendment. There are three possible ways that I can could address the present mixed petition. First, I have discretion to dismiss the petition in its entirety, as urged by Respondents. Second, if certain requirements are met, I have discretion

to stay the exhausted claim so that Abrahams can pursue exhaustion of the unexhausted claims in Connecticut state court. *See Rhines*, 544 U.S. at 276-79. Third, if I find that dismissing the petition would impair Abrahams' right to seek federal relief, I can allow Abrahams to withdraw the unexhausted claims and proceed to the merits on his federal habeas petition with respect to only his exhausted claim. *See Rhines*, 544 U.S. at 278-79.

I conclude that dismissal of this mixed petition would impair Abrahams' right to seek federal habeas relief. Under AEDPA, 28 U.S.C. § 2244(d)(1), a federal habeas petitioner must file his petition within one year after his conviction becomes final. That one-year limitation period is tolled during the pendency of state habeas petitions, *id.* § 2244(d)(2), but it is *not* tolled during the pendency of a federal habeas petition, *Duncan*, 533 U.S. at 181. Although Abrahams filed his present petition within the AEDPA limitations period, at this juncture, were I to dismiss the petition without prejudice, any refiled federal habeas petition would be untimely under AEDPA. Because dismissal would impair Abrahams' right to seek federal habeas relief, I will not dismiss this mixed petition in its entirety.

Accordingly, Respondent's motion to dismiss is denied with respect to the argument that Abrahams' federal habeas petition is untimely. In addition, although I agree with Respondent that Abrahams' federal petition is a mixed petition, and I agree with Respondent as to the claims that Respondent avers are unexhausted, I disagree with Respondent's request to dismiss the petition in its entirety.

Before determining whether to stay this federal habeas proceeding to permit exhaustion or instead permit Abrahams to proceed on only his exhausted claim, I will give Abrahams an opportunity to submit a supplemental memorandum.

A stay of federal habeas proceedings is appropriate only in limited circumstances when: (1) the petitioner had "good cause" for his failure to fully exhaust, (2) the unexhausted claims are "potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278. Here, Abrahams has not articulated good cause for his failure to exhaust the unexhausted claims. However, there is also no indication that Abrahams engaged in intentionally dilatory litigation tactics. In addition, Respondent does not contend that the unexhausted claims should be dismissed on the merits, nor does Respondent suggest that no state court remedies are available to Abrahams. In such situations, the court may order the petitioner to file a supplemental motion to stay proceedings showing good cause for failure to exhaust earlier. *Bush v. Lantz*, No. 3:06-CV-410 (RNC), 2008 WL 1743500 (D. Conn. Apr. 14, 2008); *see also Davila v. Murphy*, No. 3:09-cv-1666 (DJS), 2012 WL 4190504, at *1 (D. Conn. Sept. 19, 2012) ("Since mixed habeas petitions must generally be dismissed, and since the expiration of the 1-year statute of limitations would bar Davila from refiling a federal habeas petition, the Court provided [petitioner] with an opportunity to file a supplemental response to the respondents' motion specifically addressing the three factors identified by the Supreme Court in *Rhines v. Weber,* 544 U.S. 269, 278 (2005) that must be considered by a district court in connection with a motion to stay a mixed habeas petition.") (citation modified); *Diaz v. Lantz*, No. 3:06-CV-135 (PCD), 2007 WL 1346925 (D. Conn. May 7, 2007) (directing petitioner to file supplemental motion if petitioner seeks a stay under *Rhines*).

## IV. CONCLUSION

Based on the foregoing, Respondent's motion to dismiss, ECF No. 14, is **DENIED.**

If Abrahams seeks to stay federal habeas proceedings to enable him to exhaust his unexhausted claims in state court, he is directed to file a motion, **on or before November 27, 2026**, to stay further federal proceedings on the exhausted claims while he pursues state remedies on the unexhausted claims. The motion must demonstrate good cause for Abrahams' failure to exhaust the unexhausted claims earlier.

In the alternative, if Abrahams wishes to proceed on his exhausted claim only, he must file, **on or before November 27, 2026**, a Notice advising the Court that he withdraws his unexhausted claims and chooses to proceed only with respect to his claim that his convictions for attempted murder and assault in the first degree violated the Double Jeopardy Clause of the Fifth Amendment. If Abrahams chooses to proceed with only this exhausted claim, the Court will then issue an order to show cause for Respondent to address the merits of Abrahams' exhausted claim only. Abrahams is cautioned that if he proceeds only as to his exhausted claim, he will run the risk that any subsequent federal habeas petition he may choose to file will not be considered by this Court because it would constitute a second or successive petition. *See* 28 U.S.C. § 2244(b)(2).

Abrahams' Motion for Seeking Permission to Depart from Typewritten Limitations, ECF No. 22, is **GRANTED**. I have considered the entirety of Abrahams' opposition and exhibits.

**SO ORDERED.**

New Haven, Connecticut
September 28, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge